*New-Haven,*
July, 1837.

THE FIRST SOCIETY OF WATERBURY *against* PLATT:

First Society of
Waterbury
*v.*
Platt.

IN ERROR.

In *September,* 1814, the first society of *W.* and *P.,* who was then an inhabitant of, and a resident in that society, entered into a written agreement, by which *P.* (simultaneously with other members of the society,) agreed to pay 125 dollars, in five equal annual instalments, and gave his promissory notes to the treasurer of the society for the payment of such instalments. Annexed to this agreement was the following condition: " If any of the subscribers hereto shall remove without the local limits of said first society, before all the instalments become payable, those instalments, which, at the time of such removal, shall not have become payable, shall not be collectible of such person or persons so removing : provided also, that if such person or persons so removing shall return within the limits of said society, within five years after said removal, the whole of their subscription shall be due and collectible." In *October,* 1817, before the notes given for the two last instalments became due, the General Assembly of this state, on the petition of *P.,* passed an act, and thereby annexed a part of the society and town of *W.,* which was owned by *P.,* and on which he resided, to the town and society of *M.,* declaring, that it should thereafter, to all legal purposes whatever, be deemed a part of the town and society of *M.,* any law to the contrary notwithstanding. On this territory *P.* resided, uninterruptedly, from the time of his subscription to the agreement until his death, in 1836; and ever after the passing of said act, contributed to the support of the gospel ministry in the society of *M.,* of the same denomination as the first society of *W.* In an action brought by the first society of *W.* against *P.,* on the two notes, which became due after said annexation, it was held, that *P.* had not removed without the local limits of the first society of *W.,* within the meaning of the agreement; and consequently, that he was still liable on the notes. [By two Judges, including the Chief Justice, against two.]

THIS was an action on two promissory notes, made by *Gideon Platt,* deceased, for 25 dollars each, dated the 19th of *September,* 1814, payable, one in three and the other in four years from the 1st of *December,* 1814.

The defendant, who was the administrator of *Gideon Platt,* pleaded in bar the following facts. At the time the two notes counted upon in the declaration were given, a certain written agreement or articles of subscription were entered into and executed between the plaintiffs and *Platt,* who then was an inhabitant of and resident in the town and first society of *Waterbury,* by which he agreed to pay the sum of 125 dollars, in five equal instalments, for the support of the gospel ministry in said

*New-Haven,*
*July, 1837.*

*First Society of*
*Waterbury*
*v.*
*Platt.*

society ; and for such instalments, by the terms of said agree-ment, he was to give his five promissory notes, payable to the treasurer of said society, in the sum of 25 dollars each ; the note for the first of said instalments, to be payable on the 1st of *December*, 1814, and the notes for the residue to be payable on the 1st of *December* of each of the four years then following. To the articles of subscription, there was the following condi-tion, *viz.* " If any of the subscribers hereto shall remove with-out the local limits of said first society, before all the instal-ments become payable, those instalments, which, at the time of such removal, shall not have become payable, shall not be col-lectible of such person or persons, so removing : Provided also, that if such person or persons so removing, shall return within the limits of said society, within five years after said removal, the whole of their subscription shall be due and collectible." Pursuant to said articles, *Platt*, on the 19th of *September*, 1814, executed to the treasurer of said society, five promissory notes of that date, each in the sum of 25 dollars, for the pay-ment of such instalments, payable at the times and in the man-ner before-mentioned ; two of which notes are those declared on.    After the execution of these notes, *Platt* continued to re-side within the local limits of the town and society of *Water-bury*, until the 20th of *October*, 1817 ; and punctually paid all the notes so given, that became payable during this period. On the 20th of *October*, 1817, and before either of the two notes counted on in the declaration, became due, *Platt* became a resident in and an inhabitant of the town and society of *Middlebury*, where he ever afterwards resided, until the time of his death, which was in *November*, 1836, and has never since said 20th of *October*, 1817, resided in, or been an inhab-itant of *Waterbury : that is to say*, he brought his petition to the General Assembly of this state, at their session in *October*, 1817, stating, that he, owing to his local situation, was subject-ed to many and great inconveniences, in relation to his private and society interests ; that he lived more than four and a half miles from the meeting-house in the society of *Waterbury ;* that the road was circuitous, hilly and rough ; that he lived very near the *South-western* corner of the *Waterbury* society, and within a few rods of the line which divides the towns of *Waterbury* and *Middlebury ;* that the distance from his house to the meeting-house in *Middlebury*, was but little more

than two miles and three quarters, and that the road was di- *New-Haven,*
*July* 1837.rect and passable ; praying that he might be annexed to the
town, and also society of *Middlebury,* with so much of his First Society of
Waterbury
*v.*
Platt.land as was included in certain lines described in the peti-
tion, being about 84 acres of land, belonging to him.   To this
petition a citation was annexed, signed by a justice of the
peace ; which was served on the town of *Waterbury* only,
twelve days before the session of the General Assembly.   The
following act or resolve was thereupon passed, by the General
Assembly :   " *Resolved,* that that part of the town and society
of *Waterbury,* lying, &c., [describing the land mentioned in
the petition] be, and the same is hereby annexed to the town
and society of *Middlebury ;* and shall hereafter, to all legal
purposes whatever, be deemed a part of the town and society
of *Middlebury ;* any law to the contrary notwithstanding."
At the time of the passing of this act or resolve, *Platt* resided,
and ever afterwards continued to reside, until his death, on the
territory so annexed to the town and society of *Middlebury,*
being the same place where he resided at the time of his sub-
scription to said articles.   And ever after the passing of said
act or resolve, until the time of his death, he contributed to the
support of the gospel ministry in *Middlebury* society, of the
same denomination as that to which he formerly contributed,
when he resided in the first society of *Waterbury ;* and the
last-mentioned society has never, during this period, claimed,
either by taxing or otherwise, that he belonged to that society,
except by making the present claim.

   To this plea there was a general demurrer ; and the court
adjudged the plea sufficient, and rendered final judgment for
the defendant.   The plaintiffs, thereupon, by motion in error,
brought the record before this court for revision.

   *Baldwin,* for the plaintiffs in error, contended, 1. That the
words of the agreement must be understood in their ordinary
sense, unless there is something in the conditions and object of
the parties, indicating a different intent.   " *Remove*" is defined
by *Webster,* " to change place in any manner ;" " to go from
one place to another ;" " to change the place of residence."
*Web. Dict.* in verb.   " *Return*" is defined " to come or go
back to the same place ;" " to revisit."   The "*local limits*"

of the society, comprised a certain known space, including the defendants' residence.

2. That to *remove from the local limits*, according to the ordinary meaning of those words, could be effected only by a change of residence to *another place*, beyond those limits. The resolve of the General Assembly does not operate as a removal, within the letter of the condition, construing the words used according to their ordinary signification. *Annexation* is not *removal*. We do not say of an inhabitant of a new town, or of a person annexed to another town, that he has *removed*.

3. That the object in view does not require a different construction. The design was, to secure a permanent fund for the support of the ministry in the society. That object would have been defeated, if every subscriber had been at liberty to avoid payment, whenever he chose to withdraw, and join another society of the same or a different denomination. Hence, the contract did not allow it. But if, in consequence of a removal to another place, a member could not enjoy, conveniently, or at all, the benefit of the ministry in the society, it was reasonable, and not incompatible with the design of the parties, to exempt him. The defendant, by being simply annexed to another society, without a change of place, does not come any more within the object of the condition, than if he had joined, voluntarily, an *Episcopal* or *Methodist* society. He is under no greater inconvenience in attending than before.

4. That by "local limits," those then existing must be presumed to have been intended, in the absence of any circumstance to show a different intent. All societies ceased to have local limits, on the adoption of the constitution. On the defendant's construction, all the subscribers were then discharged, or else by the dissolution of *Middlebury* limits, he must be deemed to have "*returned*."

5. That the resolve of the General Assembly, on the defendant's petition, without notice to the plaintiffs, was not intended, by the legislature, to affect the rights of the plaintiffs under the contract. If it had been, notice would have been required. *Berlin* v. *New-Britain*, 9 *Conn. Rep.* 176. The rights of property vested in public corporations, are as sacred as the rights of individuals. The statute requires notice on all *adversary* petitions. *Stat.* 375. *tit.* 75. *s.* 1. The legislature,

when they granted this petition, had no knowledge of the con- <span>*New-Haven,*</span>
tract between the defendant and the society. They did not <span>*July*, 1837.</span>
*intend* to impair it. The use which the defendant is endeav- First Society of
ouring to make of it, is, therefore, unconscientious and fraud- Waterbury
ulent. v.
Platt.

*R. I. Ingersoll*, for the defendant, contended, 1. That the
agreement must be construed according to its spirit, not its
strict letter. *Lines* v. *Flagg*, 4 *Conn. Rep.* 581. 590.

2. That the "removal" which avoids the contract, is not
the physical act of going beyond the local limits of the society ;
nor is the "return" which revives it, the mere coming back
within the limits, for temporary purposes : It must be the ceas-
ing to be an *inhabitant* of the local limits of *Waterbury* socie-
ty, and becoming an *inhabitant* of another society, which sus-
pends the contract ; and the reverse would revive it. By a le-
gislative act of 1817, the territory on which the defendant re-
sided, has been taken, separated, removed from the limits of
*Waterbury* society, and annexed to *Middlebury* society. The
defendant was, territorially, legally, taken out of, removed from,
the limits of *Waterbury*. If not, then this contract, as to him,
must have a construction different from that which applies to
all the other inhabitants who signed it with him. *They*, by
leaving their residences within the present limits of *Waterbury*
society, and coming to reside on this annexed territory, which
is now a part of *Middlebury* society, would be exempt from
the payment of their instalments ; because, since the act of
1817, that would manifestly be a removal "without the local
limits of said first society :" but the defendant, though living on
the same territory in *Middlebury*, must pay. Indeed, accord-
ing to the construction contended for, by the plaintiffs, if the de-
fendant, since the act of 1817, had removed out of the state,
still he must pay ; because his original separation from the
limits of *Waterbury* society, was not a *removal ;* and his
going afterwards to reside in another state, would not be a re-
moval from the limits of *Waterbury* society, but from *Mid-
dlebury.*

3. That the intent of the parties evidently was, that the *in-
habitants* of the society should contribute towards public wor-
ship, so long as they remained inhabitants of that society ; and
that their contributions should cease, when they became in-

habitants of another society, where, of course, they would be subjected to new duties. Hence, after the legislative act of 1817, *Waterbury* society never attempted to collect taxes of the defendant, evidently considering him as without their local limits, and therefore not liable.

4. That the society of *Waterbury* was a *public* corporation, as much as a town, city or borough ; and therefore, could be altered at pleasure, by the legislature, with or without making the corporation a party to the petition. The legislature may alter or create counties, towns and societies. 1 *Sw. Syst.* 72. This power cannot be limited, because a citizen chooses to bring a petition to the legislature. In the *Dartmouth College* case, 4 *Wheat.* 518. it was admitted, that *public* corporations might be altered, by the legislature. Our statute, regulating the service of petitions to the General Assembly, is not like a constitutional provision : the power that made it, can, and often does, dispense with it. The General Assembly intended to dispense with it, when, in 1817, they passed the act as to these societies, "any law to the contrary, notwithstanding." The 6th section of the statute as to adversary petitions, provides, that "all memorials, wherein no person or party is so concerned or interested," shall be lodged in the secretary's office, on or before the eighth day of the session, otherwise "*they shall not be heard.*" Nothing can be more positive than this. But we all know, that it is often dispensed with, by a special resolve. So, too, the old law, requiring justices to make return of duties, by the 10th of *May*, was frequently dispensed with, by the legislature. The general laws regarding school money, and the assessment of taxes, are, at every session, dispensed with, for particular cases. No one ever doubted but that the sovereign power, when it has jurisdiction of the subject matter, may dispense with the laws of its making, for the regulation of its own proceedings.

BISSELL, J. The question in this case arises upon the sufficiency of the defendant's plea in bar ; and involves a construction of the contract set forth upon the record.

The notes in controversy grew out of a subscription to a permanent fund, for the support of the gospel ministry, in the first society in *Waterbury*, of which society the defendant's intestate was a member. The following is among the articles

*New-Haven,*
July, 1837.

First Society of
Waterbury
*v.*
Platt.

of subscription : "If any of the subscribers hereto shall remove without the local limits of said first society, before all the instalments become payable, those instalments, which, at the time of such removal, shall not have become payable, shall not be collected of such person or persons so removing : provided also, that if such person or persons so removing, shall return within the limits of said society, within five years after such removal, the whole of their subscriptions shall be due and collectible."

It appears, that before the instalments, for the recovery of which the present action is brought, became due, *Gideon Platt,* the intestate, preferred his petition to the General Assembly, praying, for the reasons therein stated, that he, and a certain portion of the farm on which he resided, might be annexed to the town and society of *Middlebury.* This petition was granted ; and *Platt* became an inhabitant of the last-mentioned town and society ; although he still continued to live in the same place where he resided, when the contract was made. The only question, then, is, whether he *removed without the local limits* of the society of *Waterbury,* within the spirit and meaning of this contract.

It was hardly contended, in the argument, nor can it be claimed, that the facts here set forth constitute a *removal* within the *letter* of the stipulation. The terms here employed are very explicit. They are, "*shall remove without*"—and "*return within*" the local limits of the society. Now, *to remove,* is, by the most approved lexicographers, defined—"to change place in any manner"—"to go from one place to another"—"to change the place of residence." *To return,* is defined—"to come or go back to the same place"—"*to revisit.*" Can *Platt,* within any of these definitions, be said to have *removed* without the local limits of the society of *Waterbury ?*

It may further be remarked, that the popular import of these terms, is not less well defined, than the philological ; and it is utterly subversive of both, to say, that a man can *remove from,* and *return to* a place, and yet never actually change his location. Several towns were lately taken from the county of *Windham,* and annexed to the counties of *New-London* and *Tolland.* Is it true, in any sense, that the inhabitants of these several towns have *removed from* the county of *Windham ?*

*New-Haven,*
*July, 1837.*

First Society of
Waterbury
*v.*
Platt.

And suppose a new act were to be passed re-annexing them to the latter county; could it be said, that they had *removed from* the counties of *New-London* and *Tolland,* and *returned to* the county of *Windham ?* Surely not, unless *annexation* and *removal* mean precisely the same thing.

It is, however, said, that this contract is to be construed, not according to the *letter,* but according to its *spirit* and *meaning :* that we are to ascertain, from the whole contract, what the parties intended, and then to give effect to that intention. All this is very true. But still the intention of the parties is to be ascertained, from the terms they have employed ; and when these are well-defined, and free from all ambiguity, we may not reject them, or put upon them a forced construction, in order to relieve a party from some supposed hardship. This would be, not to construe, but to make a contract, for the parties. We had supposed, that the rules of construction, as applicable to contracts, were, long since, well settled ; and that among these, one of the most familiar is, that words are to be received in their ordinary signification, unless, upon the whole contract, an intention is manifested to employ them in some other sense.

Now, is there any thing in the contract before us, indicative of such an intention ? Is there any thing, from which we are at liberty to infer, that when the parties speak of removing without the local limits of the society, they did not mean precisely what those terms import—an actual, physical removal ? What was the great and leading object of the parties to this contract ? It undoubtedly was, to make a permanent provision for the support of the gospel ministry, in the society of which they were all members. This is apparent from the whole instrument. And it is equally apparent, that, in the opinion of its framers, it would be inconsistent with the object, to permit every subscriber to avoid the payment of his subscription, by merely uniting himself to another society, either of a different, or of the same denomination. Had such been their intention —had it been their meaning, that any subscriber might discharge himself from his obligation, by ceasing, *in any manner,* to be a member of the society, they doubtless would have said so. They have said no such thing—and it seems to a majority of the court, that we cannot say, that such was

their meaning, without doing violence to the language of the contract.

It was, indeed, distinctly conceded, in the argument, that had the intestate united himself to a society of a different denomination, the obligation of this contract would not *thereby* have been discharged. And why not? Clearly, because that would not have been a removal, within the meaning of the contract. Suppose, then, that he had united himself to a society of the same denomination: that he had (as after the adoption of the constitution he might have done) enrolled himself as a member of the society in *Middlebury* : would that have been a removal without the local limits of the society of *Waterbury*? And would his contract *thereby* have been discharged? It is not easy to see any ground of distinction between the two cases; and why in the one, the contract should be discharged, and in the other, not; or how he can be said to have *removed*, in the one case, and not, in the other. But the intestate, instead of enrolling himself *in*, has caused himself to be *annexed to*, another society. Does this vary the case? It is contended that it does—and it is said, that, by a sovereign act of the legislature, the intestate was *taken out of, removed from*, the local limits of the society of *Waterbury*. It is true, that by a resolve of the legislature, the territory on which he lived, was annexed to the town and society of *Middlebury*—and this is all : it was a simple act of annexation. But annexation, we have said, is not removal. And in order to sustain the position of the defendant's counsel, language must be perverted both from its grammatical and its popular signification. How then, can it be said, that *Platt* removed without the local limits of the society, within either the letter or the spirit of the contract?

Besides, it should be borne in mind, that the resolve of the General Assembly was not *in invitum*. It was not an act transferring the intestate from one society to another, without his agency and against his wishes : on the contrary, it was upon his petition. He procured the act to be done. And does it, can it, make any difference, in point of principle, whether he procure himself to be annexed to another society, by the intervention of the legislature, or whether he enrol himself in such society, by his own act? He is equally a volunteer, in both cases ; and it is very difficult for us to see why, he may

*New-Haven,*
*July, 1837.*

First Society of
Waterbury
*v.*
Platt.

shake off his contract, in the one case, and not in the other. In either case, he ceases to be a member of the society of *Waterbury ;* and in either case, he voluntarily assumes new duties towards, and is subjected to new burthens from, another corporation. And all this would have been equally true, had he united himself to a society of a different denomination.

Again ; it has been said, that the intent of the parties evidently was, that the *inhabitants* of the society should contribute to the support of the gospel ministry ; and that, upon any one ceasing to be an *inhabitant,* the contract, as to him, should cease to be obligatory. This distinction between an *inhabitant,* and a *member* of the society, if it exist at all, must be found in some part of the contract. And this brings us back again to the enquiry—what do the parties mean, when they speak of a removal *without the local limits of the society ?* Did they speak of those limits, *as they then were,* or in reference to some contemplated change in those limits? Can there exist a doubt on this subject? It has already been stated, that the great object of the parties to this contract, was, to provide for the permanent support of the gospel ministry, in the society of which they were all members ; and that this design would have been frustrated, had every subscriber been at liberty to avoid his subscription, by withdrawing from that, and uniting with another society. The contract, therefore, did not allow this. But if, in consequence of a *removal to another place,* a member could not conveniently enjoy the ministry in that society, it was reasonable, and not incompatible with the design of the parties, that he should be exempted.

Such, as it appears to us, is the sound and reasonable construction of this contract. It was not, as we think, the intention of the parties to exempt any one, so long as his *location,* his *place of residence,* remained unaltered : that when they speak of a removal, they mean *that,* and nothing else : and that when they speak of the local limits of the society, they speak of those limits as then existing and known, and not in reference to any possible or supposed change. There is not the slightest evidence growing out of this contract, to shew, that any such change was in their contemplation. Suppose the legislature had, by a sovereign act, as the constitution has since virtually done, broken up the local limits of all ecclesiastical societies ; could it have been contended, that every party

to this contract was thereby discharged from his obligation? *New-Haven,* That every one had removed without the local limits of the July, 1837. society, within the spirit and meaning of this contract? We First Society of think not; and yet we are unable to see why this consequence Waterbury would not follow, upon the construction claimed by the defend- *v.* ant's counsel. We do not doubt the power of the legislature Platt. to change the local limits of an ecclesiastical society. Nor do we deny, that the power has been properly exercised, in the case before us. But the legislature has no power to impair the obligation of a contract.—Nor has it attempted so to do, in the present case. The contract remains precisely what it was, when entered into, by the parties. If it was entered into, by them, in view of any such action of the legislature, and with the understanding that it would cease to be obligatory upon any party, by a change of the local limits of the society; the construction that has been put upon it, is undoubtedly right, and the decision of the superior court ought to be affirmed. But it seems to a majority of the court, that such an under-standing will be sought for in vain, in the terms of the contract; and we are not permitted to look beyond that, nor to indulge in any speculations as to what might be just and equitable between the parties.

For these reasons, we are of opinion that the judgment of the superior court must be reversed.

WILLIAMS, Ch. J. concurred in this opinion.

CHURCH, J. Several questions have been raised on this argument, which I have no occasion particularly to discuss, because I do not understand that any essential difference of opinion exists in the court concerning them.

1. It was urged, that the resolve of the General Assembly, transferring the deceased *Gideon Platt* from the first society of *Waterbury*, to the ecclesiastical society of *Middlebury*, was void, because the petition of *Platt* to the General Assembly, for that purpose, had never been served upon *Waterbury* society. To this objection, I think, there are several answers.

In the first place, the statute requiring petitions to the General Assembly to be served upon all persons concerned, is only directory of the practice of that body, and may, at its pleasure, be dispensed with; and it was dispensed with, in this case;

the resolve declaring its own effect—" any law to the contrary notwithstanding."

Secondly, ecclesiastical located societies in this state, have always been considered and treated as public corporations, as much so as towns or school societies. All laws, therefore, creating or establishing them, may be enacted, without any petition or preliminary action on the part of any body. The petition in the present case, therefore, was wholly unnecessary; and therefore, no service of it was necessary to render the law effective.

Thirdly, it was said, that this resolve operated as a fraud, or may have so operated, upon the ecclesiastical society of *Waterbury*, because they had not, by a service of the petition, any opportunity to appear and defend before the legislature.

That there was no fraud in fact, is certain; because the petition was served upon the *town of Waterbury*, and thus effectually, although not in form, served upon every individual constituting the society. But as it is not, and cannot be, pretended, that the act in question is unconstitutional; even if I supposed it to have been procured, by a fraud upon the legislature, I should not know where to find any power in this court to disregard the law on that account. The court has never been constituted the guardian of the legislature. In *England,* the *King's letters patent* may, if procured illegally, or by fraud, be set aside, by his chancellor; but it is not known, that an act of *Parliament* was ever disregarded, by the courts of the realm, for that cause. And in the constitutional governments of this country, a power of controul over constitutional laws has never been, and never ought to be, conferred upon the courts. *Fletcher* v. *Peck,* 6 *Cranch,* 87.

2. But the question, upon which we essentially differ in opinion, is, whether *Gideon Platt,* the deceased, removed without the local limits of the first ecclesiastical society of *Waterbury,* within the spirit and reasonable intent of the condition annexed to the articles of subscription, which he signed? And that he did so remove appears to me quite obvious. That he was a member and an inhabitant of the first ecclesiastical located society of *Waterbury,* is certain; and that he has since become a member of a distinct and different located ecclesiastical society, is just as true. His duties, his privileges, his person and estate have all been transferred from one society to another.

Why, then, has he not removed ?    The answer in effect is, that because he has not been removed, by some locomotive power, he has not removed at all.    And the reply is, that a removal or a transfer, effected by the power of the law, is as effectual, both in spirit and effect, as a removal which would have placed him in any other part of the state.    *Qui haeret in litera, haeret in cortice.*

*New-Haven,*
July, 1837.
_____
First Society of
Waterbury
*v.*
Platt.

The farm of *Gideon Platt* constitutes a part of the territorial limits of the ecclesiastical society of *Middlebury.*    If any other one of these subscribers were to fix his residence there, he would be exonerated from this obligation ; and yet, it is contended, that *Gideon Platt* residing on the same farm, and perhaps in the same dwelling, is not so exonerated.    To such inconsistencies does the claim of the plaintiffs bring us.

If the parties to this arrangement did not have in actual contemplation such a state of facts as we see here, I am confident, that it is in entire consistency with their purpose and intent.    Did they intend, that any one of their number, whose duties to the society of *Waterbury* should cease, and whose privileges there could be no longer enjoyed, but whose duties and privileges should both be transferred and confined to another located society of the same denomination of *Christians,* should still continue responsible to the located society, with which they should be no longer connected ?    I think not.    It would have been unjust ; and it cannot be presumed.    And for this reason, the case of a *removal* was provided for ;    as in that way only, as the law of the state then stood, could a person, while he retained his belief in the doctrines, discipline and worship of the located society of which he was a member, ever become discharged from his obligations to support such society.    And I see nothing in the conditions of this subscription to induce me to suppose, that the parties to it were intentionally making any provision for dissenters.    And here I will add, that if *Gideon Platt* did not remove, or was not removed, to the located society of *Middlebury,* he still continued liable to be taxed for the support of the gospel in *Waterbury.*

It was said in argument, that the parties had reference to the local limits of the society, as they then existed, without regard to what they might be at a future time.    I know not why this was said.    It is very certain, that the whole arrangement had reference to future time, and provided for future

*New-Haven,*
*July, 1837.*

*First Society of*
*Waterbury*
*v.*
*Platt.*

contingencies.  And it seems to me quite too much to say, if by an act of the legislature, as was very common at that day, the first ecclesiastical society of *Waterbury* had been divided, so as therefrom to constitute two societies, that these subscribers could have been compelled to pay taxes in one, and this subscription in another society.

An argument more insisted upon than any other, in favour of what seems to me a very unjust claim on the part of these plaintiffs, was, that this act of the General Assembly was procured by *Gideon Platt* himself, and was enacted for his accommodation and upon his petition.  If this proves any thing, it is nothing more, than that the removal of *Gideon Platt* from the society of *Waterbury*, was voluntary.  And this is true.  Did the parties intend, that no other removal than an involuntary or compulsory one should discharge the liability ? I am sure it will not be claimed.  The reasons for the removal were sufficient, in the opinion of the only tribunal which had a right to investigate them.  Perhaps, by the discontinuance of some road or bridge, the communication between the petitioner and the place of public worship in the first ecclesiastical society of *Waterbury*, was entirely cut off.  I have already said, and I think correctly, that no petition to the General Assembly was necessary for its action in this case.  The resolve of the Assembly was constitutional ; and whether it was enacted, by reason of the formal presentation and proof of a petition, by *Platt,* or by some other person against his consent, or by reason of any other influence operating upon the legislature, can make no difference, either in the construction of the act itself, or in its effect upon the corporations whose limits it affected.

In this opinion WAITE, J. concurred.

HUNTINGTON, J. not having been present, when the case was argued, gave no opinion.

Judgment reversed.